UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 03:09CR200 (AWT) |
| | : | |
| v. | : | |
| | : | |
| LUIS SOTO | : | APRIL 30, 2010 |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION TO PRECLUDE CELL PHONE EVIDENCE

On February 6, 2009, during the course of the investigation into the five bank robberies discussed in other filings in this case, the Government applied for and received an order from United States Magistrate Judge Thomas P. Smith for cell site and phone records for over one hundred phone numbers.  Prior to that, the Government had received from local police departments certain cell phone records for numbers associated with Luis Soto, Felix Soto, and other associates, as well as phones that were connected with the robbery.  In essence, the Government selected the numbers in its cell site order by looking at the telephone numbers calling and being called by the known phone numbers at or around the time of each robbery.  The Government received compliance for a portion of the requested numbers during the spring of 2009, while another portion of the request was not filled because the Government did not have the correct carrier (in many cases because the carrier had changed or been bought/sold).  The major portion of the numbers were from Verizon and Sprint.

Initially, the Government recognized certain significance to the phone numbers that had already been examined by the local police departments.  For example, the fact that a phone subscribed to by Lisa Bell, Felix Soto's wife, called the phone used to make one of the hoax 911 calls is well documented in the police reports.  Moreover, the Government had a phone number it

knew to be used by Luis Soto, but the records for that phone did not reveal anything significant as it related to what was known at the time regarding the robberies. When the Government initially received the cell site order returns, it did not at first recognize significant patterns that would assist in proving these cases. It is worth noting that at the time, the Government did not understand the significance of the roles of Zeno Daigre, Courtney Mitchell, and Betsy Robles in relation to this case.

On September 8, 2009, a federal grand jury in Hartford returned an indictment against the defendant, Luis Soto, and his brother, Felix Soto, which charged the defendant with two counts of bank robbery, in violation of 18 U.S.C. § 2113(a). In particular, the Indictment charges that on two separate occasions, July 25, 2008 and September 19, 2008, the defendant took money by force, violence and intimidation from the presence of another person while the money was under the custody and control of a federally insured bank. The defendant is charged together with his brother for the July 25 robbery.

On October 7, 2009, the Government provided the defense with discovery in this case, which consisted of Bates stamped pages 1-707. At Bates stamp pages 674 through 707, the Government included the cell site order Affidavit, which listed each and every phone number that the Government ordered (although results were not received for all). The discovery letter indicated the Government's intent to use all evidence in its possession at trial. At the time the discovery was provided, the Government verbally told the defense that the returns from the cell site order were available for review.

As months progressed, the Government learned more about the case. It was discovered that each of the defendants had multiple phone numbers, but still none of them indicated a particular

2

relationship with the bank robberies. The Government looked for phone calls between the defendants' numbers and those of Mitchell and Daigre. Yet there were no calls between those phones. Then, approximately two weeks ago, the Government reviewed the records yet again to look for patterns related to the bank robbery. This time the Government noticed common numbers dialed by Mitchell and Daigre around the robbery on July 25, 2008. One of the numbers was registered to Avant Services, a former employer of Felix and Luis Soto; the other number was not contained in the records in the parties' possession. The Government then issued a subpoena for call detail and subscriber information for the other number on April 26, 2010, and learned that the number was also associated with Avant. On the same day, prior to the continuation of the suppression hearing in this case, the Government informed the defense that it was likely that there would be a significance to these phone records, but that certain facts had to be confirmed before anything was certain (namely, to determine from Avant that these phones were assigned to the defendants). The Government asked the defense whether they would like a copy of the records to look at themselves. However, they preferred to wait to hear what the Government learned.

Following the hearing, the Government spoke to Marlene Holmes of Avant, who stated that Avant kept records for phones issued to employees, and that the records indicated that the two phones at issue were in fact issued to Felix Soto and Luis Soto, respectively. The Government immediately called the defense and arranged for a meeting on Wednesday, April 28, 2010, to present what had been discovered. The Government, using nothing more than the data provided by Sprint and Google Maps, plotted the location of the cell towers and produced a summary spreadsheet of the calls around the time of the robbery. In essence, the records showed multiple calls around July 25, 2008 between the two defendants' and the three co-conspirators. Many of those calls were handled

3

by cell towers near the location of the Webster Bank at 40 Webster Square Road in Berlin.[1]  At that

time, the Government gave copies of all of the phone records received from Sprint and Verizon

(although the relevant records for purposes of this motion come primarily from Sprint).

## II.    LEGAL ARGUMENT

First, the defense contends that the records are "inadmissible hearsay," because the reports

"have been created in response to a government subpoena."  This is a misapplication of FRE 803(6),

which states that the following are not excluded by the hearsay rule:

> (6) Records of regularly conducted activity. A memorandum, report, record, or data
> compilation, in any form of acts, events, conditions, opinions, or diagnoses, made at
> or near the time by, or from information transmitted by, a person with knowledge, if
> kept in the course of a regularly conducted business activity, and if it was the regular
> practice of that business activity to make the memorandum, report, record, or data
> compilation, all as shown by the testimony of the custodian or other qualified
> witness, unless the source of information or the method or circumstances of
> preparation indicate lack of trustworthiness. The term 'business' as used in this
> paragraph includes business, institution, association, profession, occupation, and
> calling of every kind, whether or not conducted for profit."

In the case of phone records, the records maintained by the phone companies are made

consistently with the requirements of the rule.  The reports generated upon requests from the

Government are merely snapshots of those records which were completed when the actual phone call

was made.  The fact that the computer printouts of phone records presented at trial "were prepared

specifically for this case, thus not in the regular course of [the phone company's] business, does not

preclude their admission under Rule 803(6). It is sufficient that the data compiled in the printouts

was entered into the computer contemporaneous with the placing of each telephone call and

---

[1]The Government also discovered a connection between one of the defendant's other phones and a cell
phone that he had provided to Iris Martinez, which was used only during a brief period in September 2008.  That
information is relevant only to the incidents of September 19, the subject of another motion.

4

maintained in the regular course of business." <u>United States v. Briscoe</u>, 896 F.2d 1476 (7th Cir. 1990).  "It would restrict the admissibility of computerized records too severely to hold that the computer product as well as the input upon which it is based, must be produced at or within a reasonable time after each act or transaction to which it relates." <u>United States v. Russo</u>, 480 F.2d 1228, 1240 (6th Cir. 1973).  Indeed, no phone records would ever be admissible at trial if the Court were to adopt the defendant's reading of the rule.

The defendant next challenges the authenticity of the phone records and/or the use of certifications for the admissibility of the phone records.  Certifications are admissible under FRE 906(11), provided they meet the requirements of FRE 803(6) and that the defense is given sufficient notice to provide an opportunity to challenge them.  One of the certifications is attached for the Court's consideration.  In this case, it appears the defense contends that it does not have sufficient time to challenge these certifications, which were sent to the defendant on April 29, 2010.  The Government  does not plan to enter any of the phone evidence until the near end of the trial, either on Friday, May 7 or Monday, May 10.  Moreover, the defense does not, in its motion, indicate what exactly it objects to in the certifications themselves that would necessitate further argument, other than to challenge the admissibility of the records themselves.  These certifications are not from an obscure company that would require a great deal of investigation.  These certifications are from Sprint Communications, Inc., one of the largest phone companies in the world, whose phone records are entered into evidence by certification around the country on a regular basis.

Next, the defendant challenges the interpretation of the records.  First, it bears noting that there is no interpretation necessary for non-cell site data – the records provide a time, date, calling number, called number, and duration.  If that was not straightforward enough, the phone company

5

has also provided a key to understand each of those columns.

It appears, then, that the defendant's primary challenge in this regard is to the use of cell tower data. First, it bears noting that the same key provided with the certified records allows anyone of reasonable lay intelligence to map the use of cell towers. In essence, for each call the records provide a cell tower number. The cell tower number can then be looked up in other certified records, which gives a latitude and longitude for the tower location. Then any publicly available mapping tool (the Government has used Google maps) can be used to find the location of the tower. In fact, the Government showed the defense exactly how it performed this "analysis" during the aforementioned Wednesday meeting.

The defense contends that the government would need an "expert" to testify to the significance of the phone records. At this time, the Government plans to call Sergeant Andrew Weaver, an experienced officer with the Hartford Police Department, for the limited purpose of entering into evidence summary charts and demonstrative exhibits created from the phone records and other admissible evidence. Sergeant Weaver is trained in the use of a computer program that performs the same actions referred to above using Google maps, but does so in a slightly more streamlined manner. Seregant Weaver will testify to basic information about cell towers, based on his training, including that phone calls typically utilize the closest cell tower, but not always, and he will give basic information about towers' range. He will not offer any opinion about where a phone was at the time a call was made. It is anticipated that he is qualified to answer most of the questions posed on page 9 of the defendant's motion; to the extent that he cannot, the defendant is free to argue that the cell site data does not say what the Government contends; but such an argument would bear on weight of the evidence, not its admissibility.

6

The Government contends that Sergeant Weaver's testimony is not "expert" testimony under the Rules. In any event, the Government's notice is reasonable under the circumstances, as the need to introduce cell tower records was only recently discovered. Under the circumstances, the Government would not object to the defendant having an opportunity to meet with Sergeant Weaver. As state above, the Government will not introduce any evidence from Sergeant Weaver until the end of the trial. Finally, as an alternative, the Government does not object to a short continuance if the defense believes that such a continuance is necessary in order to prepare a cross examination.

Although the defense cites several cases that indicate that in the past the Government has used an expert to discuss phone records. It bears noting that simply because the Government has done so in the past, does not mean it is required. There is no question that a phone company engineer would be a compelling witness, and may be able to discuss more detail about the exact technical specifications of cell towers. However, the Government is not bound to call such an engineer, where another witness is competent to provide testimony the Government sees as sufficient to prove its case.

Finally, even if the Court is concerned by the timeliness of this issue, preclusion of the evidence is not warranted because there is no bad faith by the Government, and there are less drastic measures available. United States v. Ortiz, 213 Fed. Appx. 312, 316 (5th Cir. 2007) ("Without an improper motive, it is rare to sanction a party in a method as draconian as suppressing the evidence). In Ortiz, cited by defendant, although the Government had provided notice a month prior to trial that a phone company engineer would testify about cell towers, they did not provide the cell tower data until actually during trial. The Government did not provide any explanation for the failure to provide such records. The court evaluated "(1) the reasons why the disclosure was not made; (2) the amount

of prejudice to the opposing party; (3) the feasability of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances."

Here, the defense has been aware of the existence of cell site records for several months; they simply did not opt to examine them.  Moreover, the affidavit in support of the cell site order application explained exactly what the Government requested, the reason for it, what it would show, and the list of phone numbers the Government requested.  In that list was the defendant's Avant phone number.  Thus the defendant has been on notice for several months that these records were available, and presumably the defendant was aware of his own use of the phone.  Their relevance was always present, it just had not been discovered by the Government.

Next, to the extent that the disclosure of Sergeant Weaver, or the specific phone numbers that the Government plans to discuss, is considered late, it is reasonable under the circumstances and is not a product of bad faith by the Government.  Prior to learning the defendant's Avant phone number, the usefulness of the records in proving the July 25 robbery was unclear and the Government did not intend to introduce them.  Upon learning of the relevance of these specific numbers, the Government acted quickly to notify the defense and find an appropriate witness to testify.

The defendant has also not indicated how recent notice would unduly prejudice him.  Clearly this evidence is particularly significant, but that would have been so whenever it was disclosed.  The defendant has had an opportunity to reconsider his decision not to plead guilty, and in fact it is the Government's understanding that counsel has met directly with the defendant to discuss the phone evidence.  See Ortiz, 212 Fed. Appx. at 316.  The defendant also still has the opportunity to challenge the bona fides of Sergeant Weaver.  The proposed evidence here is not new science and,

8

as the defense aptly points out, is frequently entered into evidence in court.  Finally, the defense has not requested a continuance here, although the Government would certainly not object to one if the Court deems it appropriate.

**III.**    **CONCLUSION**

Based on the foregoing, the Government respectfully requests that the defendant's motion be denied.  This motion is filed in anticipation of this afternoon's hearing, and therefore does not set out every possible argument or point that supports the Government's position here.

Respectfully submitted,

NORA R. DANNEHY
UNITED STATES ATTORNEY

*/s/ David E. Novick*

DAVID E. NOVICK
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. phv02874
450 MAIN STREET, ROOM 328
HARTFORD, CONNECTICUT 06103

*/s/ Michael J. Gustafson*

MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT01503
450 MAIN STREET, ROOM 328
HARTFORD, CT 06103

CERTIFICATE OF SERVICE

This is to certify that on April 30, 2010, a copy of the foregoing Government's Response was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ David E. Novick*

_____ David E. Novick
Assistant U.S. Attorney

10